UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CR-00136 RLW |
| | ) | |
| PHILLIP J. CUTLER, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

COMES NOW the United States of America, by and through the United States Attorney

for the Eastern District of Missouri, Sayler A. Fleming, and Tiffany G. Becker and Zachary M.

Bluestone, Assistant United States Attorneys for said District, and states the following for the

Court's consideration in sentencing defendant Cutler on June 18, 2024.

After a seven-day trial, the jury took an hour and fifteen minutes to find defendant Phillip

J. Cutler guilty of conspiring with co-defendant Cornelius Green to commit murder-for-hire and

of actually committing the cold-blooded murder-for-hire of Jocelyn Peters, a beloved educator,

and Micah Leigh, her unborn child. Cutler received $2,500 cash—money co-defendant Green stole

from the Carr Lane Middle School's dance team fundraiser—to travel from Oklahoma to St. Louis

to carry out the depraved killings. Around 3:00 a.m. on March 24, 2016, Cutler entered Jocelyn's

apartment, retrieved a potato he knew would be there to use as a silencer, went into Jocelyn's

bedroom where she had fallen asleep drafting the invitee list for her baby shower, and shot her

through the left upper eyelid, killing her and Micah Leigh.

1

To this day Cutler has not admitted his crimes, nor expressed any type of remorse for his actions. Instead, Cutler has engaged in a pattern of obstruction of justice. After committing the murders, he went to North Riverfront Park to throw the murder weapon in the Mississippi River, where investigators had no hope of recovering it. He then repeatedly lied to investigators, actually swallowed written evidence, and ultimately perjured himself before the jury and this Court with a concocted story defying all credulity.

The statutory mandatory minimum sentence for each count of which defendant Cutler was convicted is life in prison. *See* 18 U.S.C. § 1958(a). Due to the atrocious nature of defendant's offenses, his utter disregard for human lives for his own profit, and the other statutory sentencing aims, the Court should impose two life sentences to run consecutively to one another.

## Case Summary

In presiding over the trial, the Court is exceptionally familiar with the nature and circumstances of these extraordinary offenses. Cutler's involvement in the scheme began in October 2015, shortly after co-defendant Green learned that Jocelyn Peters was pregnant. Green— a man juggling numerous paramours and a wife—had previously convinced Jocelyn to have an abortion and was planning to terminate this pregnancy as well. After searching Google for "abortion in the first 6 weeks" and researching abortion pills, Green reached out two days later to reestablish conduct with his childhood friend, defendant Cutler. At that time, Cutler needed a job and was living on his brother's couch after having stayed with his adult son in Oklahoma. He needed money to rebuild his life.

The evidence showed that Green's plan to abort Jocelyn's baby—which included crushing mifeprex pills in yogurt or oatmeal—had failed. On February 21, 2016, Green searched "how to

2

abort a baby after 5 months," and texted defendant Cutler three minutes later wanting to speak on the phone. The two then talked repeatedly, leading to the final arrangements that defendant Cutler would come to town to kill Jocelyn and the baby in exchange for cash:

| | | | |
|---|---|---|---|
| From: +13144433390 Cornelius Green To: +19183488630 Phillip Cutler | Yeah man. When you coming here? | To: +13144433390 Cornelius Green From: +19183488630 Phillip Cutler | Ok, that will work, u gonna b sending the package? |
| To: +13144433390 Cornelius Green From: +19183488630 Phillip Cutler | When do u want me to come there? | From: +13144433390 Cornelius Green To: +19183488630 Phillip Cutler | I'll call you tomorrow. What's the best time? |
| From: +13144433390 Cornelius Green To: +19183488630 Phillip Cutler | Spring break. March 18-22 | To: +13144433390 Cornelius Green From: +19183488630 Phillip Cutler | Any time will be fine, I'll b available all day just don't forget. |
| From: +13144433390 Cornelius Green To: +19183488630 Phillip Cutler | Week of March 20 | From: +13144433390 Cornelius Green To: +19183488630 Phillip Cutler | Ok |
| | | To: +13144433390 Cornelius Green From: 89549 St. Louis Community Credit Union STLCCU | slccu Text BankingBalance: SAV: 153.26 CHK: 2,813.70 |

Per their plan, co-defendant Green ensured there would be potatoes in the residence prior to Cutler's arrival in St. Louis via Greyhound on Monday, March 21, 2016.



After stalking the back alley of Jocelyn's home in the late-night hours after his arrival in town on Monday, March 21, Cutler was provided with the uncopiable key to the residence. Co-defendant Green then traveled to Elgin, Illinois early the next morning taking advantage of the hospitality of family friends to provide him with an alibi during the planned murders.

In the early morning hours of Thursday, March 24, defendant Cutler used co-defendant Green's white Kia Optima to go to Jocelyn's home and end her life and the life of the child she was so looking forward to mothering. Cutler left a horrible scene, including the blood-spattered baby shower invitation list covered with potato residue in Jocelyn's bed beside her dead body.



4



Cutler returned to co-defendant Green's home, later confirming with Green that the murders were complete. Shortly thereafter, Cutler traveled to North River Front Park to dispose of the murder weapon before going to work for the day until Green arrived back in town. Per their plan, defendant Cutler picked Green up at the train station upon his return.



After Green pretended to be shocked discovering Jocelyn's lifeless body, he was questioned at SLMPD headquarters. Panicking as he thought the Kia Optima remained parked near

Jocelyn's home, Green called defendant Cutler to retrieve the car. Investigators successfully intercepted Cutler and then interviewed him. So began a series of lies and deceptions to law enforcement officers. He told investigators he came to town to meet his attorney, see his "babies," visit his dad, and visit Green. When he asked to leave, police told him he would be held for questioning in connection with the homicide and asked for his phone number and cell phone provider. When left alone in the interview room, Cutler physically ate two pieces of note paper from a notebook in his pocket, literally swallowing evidence.



As the investigation progressed, police realized Cutler's story didn't hold water. He came from Muskogee to visit his attorney (which was unnecessary to do in person and took just minutes). While claiming to want to see his children, he did not contact his ex-wife in advance and saw them only a short time in a warehouse parking lot. His father was out of town while he was in St. Louis, and Green left the very morning after Cutler's late-night arrival in St. Louis.

After conducting interviews and obtaining Cutler's location information, officers obtained an arrest warrant for Cutler and arrested him in Oklahoma. When confronted with the fact that both the white Kia Optima and Cutler's phone was at Jocelyn's apartment between 3:00 and 4:00 a.m., Cutler stuck with his story that he was asleep. When pressed, he said he must have left his

6

phone in the car overnight and someone must have stolen the vehicle. Detectives pointed out how ludicrous it was to believe that someone stole the vehicle without doing any damage to it, used Cutler's phone to contact his known associates, committed a murder, and then returned the car it right back to the same spot. Nevertheless, defendant Cutler doubled down on the denials of his involvement.



DET. BIODOLINO:  If you left it and you're the
only person in control of that car and you left
the phone in the car, then you tell me who was
in it because --
CUTLER:  I don't know.  I don't know who was in
it, but it wasn't me.
DET. BIODOLINO:  Well, hey, look.
CUTLER:  I don't know who was in it, but it
wasn't me.
DET. BIODOLINO:  Hey, brother.  I'm not going
to sit here --
CUTLER:  It wasn't me.
DET. BIODOLINO:  I'm not going to sit here and
bullshit you.  Okay?  His sister doesn't have
keys to it.  She can't even drive even if she
did.  She takes a taxi to work or she gets
rides from him.
CUTLER:  Um-hum.
DET. BIODOLINO:  Okay?  Nobody else is there.
They saw you come home in that car.  She went
to bed.  Okay?  Nobody else had access to that
car.
CUTLER:  I went to bed, too.
DET. BIODOLINO:  No, you didn't.
CUTLER:  Yes, I did.
DET. BIODOLINO:  Okay.  Nobody had access to
that car, Philip.
CUTLER:  Somebody could have stole it then.
DET. BIODOLINO:  Nobody stole it.  They stole
it and then gave it back to you, put it in the
same spot?
CUTLER:  I don't know.  Somebody --
DET. BIODOLINO:  Is that what you're telling
me? Hold on a second.  Hold on a second.
CUTLER:  I was just using the car to do what I
needed to do while I was there.
DET. BIODOLINO:  We know you were using it to
do what you needed to do.
CUTLER:  But that was it.  I wasn't in the car.
DET. BIODOLINO:  All right.

Cutler not only lied repeatedly to police, but also committed perjury at trial. After taking an oath to tell the truth, Cutler boldly lied in an attempt to manipulate the jury. He sat back and listened to all the evidence at trial. At the conclusion, he decided to testify. In so doing, he crafted yet another unbelievable story with the hope of explaining the damning evidence against him. Significantly, Cutler seemingly had an excuse for every single piece of the Government's evidence.

Cutler said the $2500 Green mailed him was for travel expenses, despite the fact he took a $100 bus ride and incurred no local transportation costs or housing expenses. When faced with the fact that upon arrival in St. Louis from Oklahoma, Cutler was driven by Green to the alley behind

Jocelyn's apartment for a short time in the late-night hours, Cutler claimed to have been asleep after smoking marijuana given to him by Green.

Cutler's new story about the night of the murder was even more outlandish. He claimed that Green called him around 10:00 p.m. the night before the murder and told him to go to Jocelyn's house to see if she was cheating on him. Unexplainably, Cutler said he waited until almost 3:00 a.m. to drive over to her apartment. When he did not initially see anything, he nevertheless stayed for a while, until deciding to return to Green's residence. This story was absurd.

Equally ridiculous was Cutler's testimony regarding his trip the next morning to North River Front Park. When in reality, Cutler decided to dispose of the murder weapon in the river, Cutler testified he went to this remote riverside park at 8:00 a.m. (after speaking to Green on the phone) to reminisce about his childhood and smoke marijuana. Cutler further lied to the jury about eating the paper in his pocket—citing his fear of the police finding out about his effort to buy marijuana from a small-time dealer as the reason he ingested two pieces of paper from his notebook when left alone in the interview room.

Probably most outlandish, was Cutler's revelation about the contents of the second package mailed to him after the murder. This package was sent as Cutler looked for money to pay "Wendy Cadillac" for a car he wanted to purchase. Cutler clearly needed more money from Green for having committed the murder. Knowing that the police were onto them, Green himself could not send another package, so he arranged for an associate, "JFK" to do it.

| 5/30/2016 | 3:21:29 PM | From: 71902757 Cornelius Green | | Cornelius called you. |
| 5/30/2016 | 3:21:55 PM | From: +13145365285 JFK | | Text the address to this# |
| 5/30/2016 | 3:23:03 PM | | To: +13145365285 JFK | 335 N 7th st Muskogee OK 74401 |

| 5/31/2016 | 10:16:44 PM | | To: +13145365285 JFK | Its all good bro. |
| 5/31/2016 | 10:18:38 PM | From: 100010615624813 Phillip Cutler | | Cornelius missed a call from you. |
| 6/1/2016 | 7:34:05 AM | From: 71902757 Cornelius Green | | Cornelius called you. |
| 6/1/2016 | 12:03:46 PM | From: 13145365285 JFK | To: 9183488630 Phillip Cutler | |

smil.smil   imagejpeg_0.jpg

On the stand, Cutler admitted that "JFK" was an associate of Green's and that JFK sent him a package on Green's behalf. But when asked about the contents, Cutler said it was "teddy bears and cookies" for his son. While Cutler had young sons in St. Louis, the only son he had in Oklahoma was 19 years old at the time. At every turn in his testimony, Cutler willfully attempted to deceive the jury and the Court. Far from accepting responsibility for his crimes, Cutler remains strident in his attempts to escape their consequences.

Executing this heartless, calculated plan that resulted in the senseless taking of two innocent lives in such a violent, traumatic way is undoubtedly one of if not the most egregious offenses one can conceptualize.

**Sentencing Factors**

As the Court is well aware, Title 18, United States Code, Section 3553(a) provides that prior to determining the sentence to be imposed, this Court must consider:

> 1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> 2) the need for the sentence imposed –
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and

9

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) the kinds of sentences available;

4) the kinds of sentences and the sentencing range established for—
(A) the applicable category of offenses committed by the applicable category of defendant as set forth in the guidelines...

5) any pertinent policy statement ---
(A) issued by the Sentencing Commission...

6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct...

18 U.S.C. §3553(a).

### *The Nature & Circumstances of the Offense and Defendant Weigh Heavily in Favor of a Sentence of Two Consecutive Life Terms*

As set forth above, the nature and circumstances of the offense are simply horrific. For a relatively small sum of money, Cutler brutally murdered two innocent people. This was not a crime of passion; it was premeditated over the course of more than a month. It was planned with excruciating detail, down to the availability of potatoes in Jocelyn's home that would serve to muffle the gunshot that would end her life and the life of her unborn child. After completing the crime, Cutler concealed evidence including the murder weapon and his notes. His efforts to get away with the crime unscathed continued through his perjurious testimony at trial.

Cutler committed particularly cold, calculated offenses for his own economic advantage. It is difficult to envision a more depraved offense.

### *Defendant Cutler's History and Characteristics Demonstrate Weigh in Favor of Imposing the Sentences Consecutively*

While Defendant Cutler is in Criminal History Category I, his prior conviction for stealing is highly probative of his character. A victim businessman who regularly shipped jewels, diamonds

and money went to the Chesterfield, Missouri FedEx where Cutler was working. The victim completed a shipping air bill, but packages were not being accepted at the front counter. Defendant Cutler took the package from the victim representing he would take care of sending it. The package, which contained more than $25,000 worth of contents, never made it to the recipient. When interviewed about the package by law enforcement, Cutler denied involvement. He even agreed to submit to a computer voice stress analyzer test. When he denied stealing the package, the test revealed no signs of deception. However, it was later discovered and confirmed that defendant stole and pawned the jewelry. He pleaded guilty after taking a deal that guaranteeing he would be sentenced to probation.

Cutler has tried to lie his way out of criminal responsibility before and has done so again in this case.

### *Other § 3553(a) Factors Weigh Heavily in Favor of Imposing Two Consecutive Life Sentences*

The remaining factors set forth in 18 U.S.C. § 3553(a)(2) also weigh in favor of imposing the life sentences Cutler earned to be served consecutively. Specifically, to promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant, a sentence of two consecutive life terms is entirely appropriate.

Completely just punishment cannot be obtained in this case. Nothing will bring back Jocelyn Peters or allow her to give birth to her daughter and continue to be a positive, loving force for her students. Defendant Cutler's crimes not only ended the bright futures of Jocelyn and Micah Leigh but also devastated Jocelyn's family and friends, as well the students and faculty of Mann Elementary School. After her Jocelyn's murder, Nicole Conaway, principal at Mann Elementary

at the time, said Jocelyn was one of the very best educators she had had the honor of working with and was so impressive during her job interview, Ms. Conaway offered her a job within 15 minutes of meeting her.

Jocelyn's third-grade students adored her, and she loved them. She was planning to get her doctorate. She was given an award as one of the most outstanding educators in St. Louis in 2014 and was one of the reasons Mann had been making gains in attendance and academic scores. Jocelyn was not just a great teacher, but a loving, caring presence in the lives of her students. She tutored some of her students at their homes, played Monopoly and read in her free time. She sang in the choir at The Journey Church.

Cutler robbed Mann Elementary students of a loving teacher. He robbed them of a better education, and without a doubt, shook their sense of security. Students were provided with grief counselors when they returned from spring break. The school canceled classes so that students and faculty could attend her funeral. Several hundred people were there, including a group of her third graders with tears streaming down their faces.

Cutler has shown no remorse. He is a cold, calculating killer. To provide just punishment for taking the lives of Jocelyn and Micah Leigh and to provide adequate deterrence to those contemplating similarly horrendous crimes, two life sentences, imposed consecutively is necessary.  The public must be protected from Cutler, a proven murderer and liar.

12

WHEREFORE, for all the foregoing reasons, the United States respectfully urges the Court to sentence defendant Cutler to two consecutive life terms in prison.

Respectfully submitted,

SAYLER A/ FLEMING
United States Attorney

*/s/ Tiffany G. Becker*
TIFFANY G. BECKER, #46314MO
Assistant United States Attorney
111 S. Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed electronically on June 11, 2024 and served by operation of the Court's electronic filing system on defendant Cutler's counsel.

*s/ Tiffany G. Becker*
TIFFANY G. BECKER, #46314MO
Assistant United States Attorney